UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOSEPH PHILLIP KNOWLES                                              PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 1:12CV371-HSO-RHW

CAROLYN W. COLVIN,
Acting Commissioner of Social Security                              DEFENDANT

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

This matter is before the Court on Plaintiff Joseph Phillip Knowles's [1] Complaint and

[12] Memorandum in Support to Reverse, or in the Alternative, to Remand;  and Defendant's

[10] Answer and [13] Memorandum in Support to Affirm the Decision of the Commissioner of

the Social Security Administration.  In his memorandum, Plaintiff argues that the

Commissioner's decision should be reversed and/or remanded because (1) the administrative law

judge (ALJ) applied an incorrect standard of severity at step two, and the ALJ's finding with

respect to severity was not supported by substantial evidence; (2) the ALJ failed to properly

consider or explain the six-factors pertaining to the weight given to the treating physician; and

(3) the ALJ's finding that Knowles could perform light work was internally inconsistent, as his

residual functional capacity (RFC) is properly categorized in the sedentary range and the ALJ

and Appeals Council failed to properly consider this a borderline case warranting application of

the Medical Vocational Guidelines at 201.09.

## Factual and Procedural Background

Knowles filed for disability insurance benefits on July 31, 2009, alleging disability as of

September 5, 2008.  He alleged that he became unable to work due to several exertional

limitations, including obesity, diabetic neuropathy, right rotator cuff problems, severe and chronic back pain, and knee pain.  He also alleged nonexertional limitations, including anxiety with depression and hypertension.  At the time of alleged onset, Knowles was 46 years old, and at the date of the ALJ decision, he was 49 years 5 months old.  He has an eighth grade education and past relevant work experience as a water well driller, deckhand, butcher, and rigger.

Knowles requested a hearing before an ALJ, which was conducted on February 11, 2011. Subsequent to the hearing, the ALJ issued a decision denying benefits.  In her written decision, the ALJ determined that Knowles had severe impairments of obesity, degenerative joint disease of the right shoulder, and degenerative disc disease of the lumbar spine.  The ALJ concluded that Knowles retained the residual functional capacity (RFC) to perform a reduced range of light work.  Specifically, she found that he could perform light work except that he is limited to standing and walking only two hours in an eight hour workday; lifting 20 pounds or lifting and carrying 10 pounds frequently; and sitting, pushing and pulling as required in light work, except he should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs; and he should only occasionally be required to reach in any direction, including overhead.  Based on the testimony of a vocational expert, the ALJ concluded that given Knowles's limitations, he could not perform his past relevant work. However, the ALJ concluded that he could perform other work, including that of a dial marker, assembler, and gauger.  Accordingly, the ALJ concluded that Knowles was not disabled.

Knowles filed a request for review with the Appeals Council.  The Appeals Council denied Plaintiff's request for review.  Knowles then filed the instant lawsuit.

2

**Law and Analysis**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA)

3

utilizes a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Id*.

**(1) Severe Impairments**

Knowles argues that the ALJ applied the wrong standard of severity at step two with respect to certain impairments.  Specifically, he asserts that the ALJ failed to give proper consideration to his impairments of degenerative changes of the left knee, lower extremity neuropathy, and anxiety with depression.

In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit held that an ALJ must reference *Stone* or the correct severity standard, which provides that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work,

4

irrespective of age, education or work experience." *Stone*, 752 F.2d at 1011.  To the extent that Knowles argues that the ALJ did not apply the correct legal standard for severity, his argument is without merit.  the ALJ did cite to *Stone v. Heckler*, and she used the language from the rule in *Stone* in her opinion.  *See* doc. [11] at 26.

Although the ALJ did not address Knowles's knee pain or neuropathy at step two of her evaluation, any error in this regard is harmless.  The severity or non-severity of these conditions were not determinative of Knowles's disability.  At step two, the ALJ found that Knowles had severe impairments of obesity, degenerative joint disease of the right shoulder, and degenerative disc disease of the lumbar spine.  Hence, the ALJ concluded that Knowles prevailed at step two and then proceeded to the remaining steps when evaluating Knowles's claim of disability.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987).  At step four, the ALJ explicitly considered all of Knowles's alleged impairments–including his knee condition, neuropathy, and anxiety with depression–when assigning an RFC.  *See* doc. [11] at 26-31.

With respect to Knowles's left knee and lower extremity neuropathy, the ALJ discussed these at some length at step four when assessing their potential impact on Knowles's RFC.  The ALJ noted that Knowles testified that he had neuropathy in both feet and that he testified regarding the limitations caused by the pain in his feet.  *Id.* at 27.  The ALJ also indicated that Knowles takes medication for his neuropathy.  *Id.*  The ALJ took into account that Knowles related a history of knee pain and neuropathy to his physicians and that an x-ray demonstrated degenerative arthritis and moderate joint effusion.  *Id.*  The ALJ acknowledged that Knowles reported difficulty with weight bearing and ambulation but that he also reported significant

improvement after a shot of Decadron with Kenalog.  *Id.*  When considering the limiting effects of Knowles's conditions, the ALJ concluded that he remained capable of standing and walking at least two hours in an eight-hour day.  *Id.* at 28.  The ALJ further concluded that Knowles should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs.  *Id.*  Hence, although the ALJ did not specifically consider Knowles's left knee pain or neuropathy when determining whether either of these conditions constituted a severe impairment at step two, the ALJ did consider these impairments and incorporated them into Knowles's RFC at step four.

With regard to Knowles's anxiety and depression, the ALJ specifically concluded that the evidence does not support a conclusion that it constitutes a severe impairment.  *Id.* at 22. Knowles argues that this conclusion "flies in the face of the vast majority of the medical evidence of record."  Doc. [12] at 18.  This court will not re-weigh the evidence, but must determine only whether there is substantial evidence supporting the ALJ's finding.  The undersigned concludes that substantial evidence does support the ALJ's determination that Knowles's anxiety with depression does not constitute a severe impairment, and that it did not cause any limitation on his ability to work.  In support of these findings, the ALJ relied on the opinions of a psychologist (Dr. Eicke) and a state agency psychologist .  As noted by the ALJ, Dr. Eicke concluded that Knowles appears capable of routine, repetitive tasks, interacting with others, and maintaining concentration and attention, although in a fairly isolated situation.  Doc. [11] at 30.  The ALJ concluded that Dr. Eicke's opinion regarding Knowles's need for social isolation was vague; however, the remainder of Dr. Eicke's opinion is consistent with the ALJ's conclusion that Knowles's mental condition did not affect his ability to work.  *Id.* at 30-31.  The

6

ALJ then gave significant weight to the opinion of a state agency psychologist who found that Knowles has no severe mental impairments or work-related mental limitations.  *Id.* at 31.  The ALJ's finding that Knowles mental impairment was not severe is supported by the opinions of Dr. Eicke and the state agency psychologist, and therefore is supported by substantial evidence in the record.

### (2) Plaintiff's Treating Physician and RFC Determination

Plaintiff next argues that the ALJ failed to accord proper weight to his treating physician, Dr. Singh, when assigning Knowles's RFC.  As a result, the ALJ relied on a non-treating source whose opinion contradicted the conclusions of a treating physician with respect to Plaintiff's physical impairments and limitations.  The undersigned concludes that the ALJ identified good cause for rejecting Dr. Singh's opinion.

Based on the opinions of two reviewing doctors, one psychologist and one physician, the ALJ determined that Plaintiff retained the RFC to stand and walk at least two hours in an eight-hour work day, lifting twenty pounds, lifting and carrying ten pounds frequently, and sitting, pushing and pulling as required in light work except he should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs; and he should only occasionally be required to reach in any direction, including overhead. On the other hand, Dr. Singh in a Physical Capacities Evaluation, concluded that Plaintiff can lift only one pound frequently and five pounds occasionally; can sit only one hour in an eight-hour workday; can stand or walk only one hour in an eight-hour workday; requires a cane to ambulate even minimally in a normal workday; should rarely push, pull, climb, balance, perform gross and fine manipulation, bend, or reach; and would likely miss more than four days work per month.

7

An ALJ does not have to give any weight to any medical opinion that a claimant is "disabled" or "unable to work," but the ALJ makes the disability determination based on consideration of the medical findings. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). With regard to the ALJ's RFC determination in this case, Plaintiff argues that the ALJ did not accord proper weight to the medical findings of Plaintiff's treating physician, Dr. Singh.  The opinion of a treating physician is to be given controlling weight if the opinion is well-supported by clinical and laboratory findings and is not inconsistent with other substantial evidence in the record.  20 C.F.R. 404.1527(d)(2); *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005).  The ALJ may accord lesser weight to a treating physician's opinion for good cause, such as where the treating physician's opinion is conclusory, not credible, or unsupported by objective medical evidence or clinical laboratory findings.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453 (emphasis in the original).  The criteria for assessing a treating physician's opinion is outlined in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6) and includes the following factors: (1) the physician's length of treatment of the claimant;  (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

The ALJ is free to assign little or no weight to the opinion of any physician for good cause. *Newton*, 209 F.3d at 455-56.  A treating physician's opinion may be rejected when the

evidence supports a contrary conclusion. *Martinez*, 64 F.3d at 176. "If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence form the treating physician". *Newton*, 209 F.3d at 453.

In this case, the ALJ assigned "great weight" to a non-treating, Disability Determination Services physician.  Plaintiff argues that the ALJ erred because she did not state the weight accorded to the opinion of his treating physician, Dr. Singh.  However, the ALJ clearly considered Dr. Singh's opinion in its entirety but thought the opinion of the DDS physician more accurately reflected the evidence as a whole.  By implication, the ALJ accorded less weight to Dr. Singh, even though she did not explicitly state the weight given to Dr. Singh's opinions.  At the very least, the ALJ gave less than controlling weight to Dr. Singh's opinion.

Plaintiff argues that the ALJ erred when she accorded more weight to a non-treating physician without conducting the six-factor analysis outlined in 20 C.F.R. § 404.1527(c)(2)(i)-(c)(6).  The ALJ did not outline and quote the language from the six factors.  However, the undersigned finds that the ALJ did consider facts that are relevant to the six factors and that these facts are supported by substantial evidence.

Concerning the first factor, the ALJ determined that the Plaintiff was treated by Dr. Singh during the period of July 2010 to January 2011.  Doc. [11] at 28.  With respect to the remaining factors, the ALJ found that Dr. Singh did not make any referrals to doctors who were specialists in the areas of Plaintiff's impairments.  *Id.* at 31.  The ALJ's conclusion is supported

by the absence of any mention of specialists by Dr. Singh.  Nor does Plaintiff point to any place in the record that indicates Dr. Singh relied upon any medical findings by specialists.

In declining to accord controlling weight to Dr. Singh, the ALJ found that Dr. Singh relied to "some extent" on Plaintiff's subjective reports. *Id.* at 31.  It does not appear that Dr. Singh used any objective medical tests such as x-rays or laboratory analysis to support his opinion, because Dr. Singh's medical reports are silent as to these types of medical tests.  *See Id.* at 331-38.  Moreover, the ALJ specifically found that Knowles's subjective statements regarding his limitations were not supported by objective and clinical evidence.  *Id.* at 30.  The ALJ believed Plaintiff's subjective reports of limiting pain to be "not credible, "self-imposed" and "exaggerated".  *Id.* at 27, 29-31.  As noted by the ALJ, just prior to the alleged onset date of disability, Plaintiff was on Methadone for seven years due to drug addiction and was having withdrawal symptoms.  *Id.* at 29.  The ALJ concluded that Knowles's may have exaggerated the frequency and intensity of his pain in his reports to physicians as part of "drug-seeking behavior".  *Id.*

Also in support of the ALJ's decision, she determined that in the months preceding the alleged onset date, that Plaintiff requested follow-up injections of Decadron with Kenalog because previous shots helped manage his weight bearing and ambulation.  *Id.* at 27. Furthermore, the ALJ found that x-rays revealed no abnormality with Plaintiff's right knee.  *Id.* at 28.  Finally, the ALJ found that Plaintiff was seeking unemployment benefits after the alleged disability onset date, from which she concluded that Plaintiff was claiming he was "ready and able to work", which is incompatible with his claim of disability.  *Id.* at 30.  Given Dr. Singh's reliance on Knowles's subjective complaints; given the ALJ's finding that Knowles's complaints

were not credible; and given the apparent lack of objective medical evidence supporting Dr. Singh's opinion, substantial evidence supports the ALJ's decision to afford less than controlling weight to Dr. Singh.

Plaintiff argues that Dr. Singh's opinion is supported by the opinion of an orthopedist, Dr. Charlton Barnes.  There is no indication in the record that Dr. Singh relied on the opinion of any specialist, let alone Dr. Barnes.  Although Dr. Barnes conducted a consultative examination on September 22, 2009, he did not offer an opinion regarding Knowles's limitations.  Dr. Barnes opined that Knowles is "disabled by obesity" and "chronic pain and dysfunction of his right shoulder."  Doc. [11] at 268.  As the ALJ correctly noted, Dr. Barnes opinion "generally addresses an issue [disability] reserved to the Commissioner."  Doc. [11] at 31; *see Frank*, 326 at 620.  Nevertheless, the ALJ took into account Dr. Barnes's comments regarding Knowles's limited range of motion in the right shoulder and concluded that Knowles has limited capacity for reaching.  *Id.*

Plaintiff finally argues that because Dr. Singh's opinion was supported by substantial evidence in the record, the ALJ erred by failing to re-contact Dr. Singh for clarification of his medical opinion.  "[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."  *Newton*, 209 F.3d at 458.  The ALJ has a duty to seek additional information from the treating physician in case of such a gap. *Id.* (citing *Schaal v Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).  "Reversal, however, is appropriate *only* if the applicant shows prejudice from the ALJ's failure to request additional information. Prejudice can be established by showing that additional evidence *would have been produced* if the ALJ had fully developed the record, and that the additional evidence might have led to a

11

different decision." *Id.* (emphasis added).  Plaintiff fails to point to any gap in the record that would have required the ALJ to request additional information from Dr. Singh.  Plaintiff  merely asserts that there might have been some additional evidence if the ALJ would have re-contacted Dr. Singh, but he has not shown that any additional evidence "would have been produced."  *Id.*

In sum, the ALJ had good cause for giving less than controlling weight to the opinion of Dr. Singh regarding Plaintiff's RFC determination.  The ALJ considered facts relevant to the six-factor analysis.  Substantial evidence in the record supported a conclusion different from that reached by Dr. Singh.  Accordingly, the undersigned finds that the ALJ did not err in his assessment of the opinions of Plaintiff's treating physician.

### (3)  Light Work vs. Sedentary Work

Plaintiff next argues that the ALJ assigned an RFC that was inconsistent with the regulatory definition of "light work".  Rather, he argues that the assigned RFC was consistent with "sedentary work."  According to Plaintiff's theory, if the ALJ had determined Plaintiff to have a RFC to perform sedentary work and Plaintiff were 50 years of age or even borderline 50 years of age, the Medical Vocational Guidelines would have directed a finding of disabled.

Plaintiff first argues that the ALJ's assigned RFC determination is facially inconsistent with the regulatory definition of light work.  Plaintiff asserts that according to SSR 83-10, a primary difference between sedentary and most light work is that the latter requires a good deal of walking.  Thus, when the ALJ determined that Knowles's retained the RFC to do "light work", except that he should stand or walk only two hours in an eight hour day, the ALJ in effect determined that Knowles retained only a sedentary work capacity.  However, Plaintiff has not pointed to any regulatory definition of sedentary work that would be consistent with the RFC as

12

determined by the ALJ.  On the other hand, the ALJ's determination aligns with the regulatory definition of "light work", which states ". . . a job is in this category when it requires a good deal of walking or standing, *or when it involves sitting most of the time with some pushing and pulling of arm and leg controls.*"  20 C.F.R. § 404.1567(b) (emphasis added).  Since the definition uses the word "or" in between the standing/walking language and the sitting language, then by definition a claimant can meet either requirement and be considered able to perform a full range of light work.  Thus, while the ALJ may have significantly limited the amount of walking and standing normally acceptable under the definition of light work, the ALJ's determination is not inconsistent with the regulatory definition as it relates to "sitting most of time with some pushing and pulling of arm and leg controls".  In fact, the ALJ specifically determined that the Plaintiff could perform the lifting and sitting requirements for light work.  Doc. [11] at 28.  Thus, the ALJ's determination is consistent with the regulatory definition of light work.

Next, Plaintiff argues that all of the occupations identified by the ALJ as "other work" that Plaintiff could perform were sedentary jobs; therefore, the ALJ should have made a RFC determination of sedentary as opposed to light work.  However, that is not how the evaluation process operates.  The RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy.  *See* 20 C.F.R.§ 404.1545(a) (listing factors that determine a RFC).  The vocational expert does not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities.  Thus, in a step-five analysis, the vocational expert's testimony depends on the RFC and not the other way around.

13

Finally, Plaintiff argues that he was close enough to 50 years of age at the time of the ALJ opinion to warrant a borderline application of the Medical Vocational Guidelines at 201.09, which would then direct a finding of disabled.  He even alleges that he turned 50 years of age by the time the final Appeals Council decision took place.  It is questionable whether the borderline category should apply to Plaintiff, because he was seven months removed from turning 50 years old at the time of the ALJ's decision.  *See Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988); *Underwood v. Bowen*, 828 F.2d 1081, 1082-83 (5th Cir. 1987).  Hence, the ALJ was well within her discretion not to consider the grid rules for the higher age category.  *See* 20 C.F.R. §§ 404.1563(b), 416.963(b).  Regardless, 201.09 of the Guidelines does not apply in this case.  Rule 201.09 applies to individuals closely approaching advanced age (age 50 to 54) who are only capable of sedentary work.  *See* 20 C.F.R. Part 404, Subpt. P, App. 2 § 201.09.  By contrast in this case, the ALJ determined that Knowles could perform light work, not sedentary work.

In sum, the ALJ did not err in determining the Plaintiff's RFC to include the reduced range of light work.  Furthermore, the ALJ should not use the vocational expert's testimony concerning available jobs in order to make a RFC determination.  Finally, because the RFC of light work was appropriate, 201.09 of the Vocational Guidelines is not applicable in this case.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be affirmed and that Plaintiff's [1] Complaint and [12] Memorandum in Support to Reverse, or in the Alternative, to Remand be DENIED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1, any party who objects to this Recommendation must, within fourteen (14) days after being served a copy of the Recommendation, serve and file with the Clerk of Court his written objections to the Recommendation, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. A party filing objections must identify specifically those findings, conclusions, and recommendations to which objection are being made; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file objections to the proposed findings, conclusions, and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court.  A party who fails to file written objections to the proposed findings, conclusions, and Recommendation within fourteen (14) days after being served with a copy, shall be barred, except upon the grounds of plain error, from attacking on appeal any proposed factual finding and legal conclusion accepted by the District Court to which the party did not object.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SO ORDERED, this the 14th day of November, 2013.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE

15